**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ABIGAIL RATCHFORD; ANDRA CHERI
MORELAND a/k/a ANA CHERI; ARIANNY
CELESTE LOPEZ; TARA LEIGH PATRICK
a/k/a CARMEN ELECTRA; CHANTEL
ZALES; DANIELLE RUIZ; JAIME
EDMONDSON-LONGORIA; JAMILLETTE
GAXIOLA; INA SCHNITZER a/k/a JORDAN
CARVER; JULIANNE KLAREN; LUCY
PINDER; TIFFANY TOTH GRAY; and SARA
UNDERWOOD,

    *Plaintiffs*,

v.

ORANGE LANTERN, INC. and MARK
PESSOLANO,

    *Defendants*.

Civil Action No.: 19-cv-

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

   Plaintiffs ABIGAIL RATCHFORD; ANDRA CHERI MORELAND a/k/a ANA CHERI;

ARIANNY CELESTE LOPEZ; TARA LEIGH PATRICK a/k/a CARMEN ELECTRA;

CHANTEL ZALES; DANIELLE RUIZ; JAIME EDMONDSON-LONGORIA; JAMILLETTE

GAXIOLA; INA SCHNITZER a/k/a JORDAN CARVER; JULIANNE KLAREN; LUCY

PINDER; TIFFANY TOTH GRAY; and SARA UNDERWOOD (collectively, "Plaintiffs"), by

and through their undersigned counsel, as and for their Complaint ("Complaint") against

defendants ORANGE LANTERN, INC. d/b/a MAGIC LANTERN and MARK PESSOLANO

(collectively "Defendants")  respectfully allege as follows:

<u>**BACKGROUND**</u>

   1.  This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their strip club, Magic Lantern located in Palmer, Massachusetts ("Magic Lantern" or the "Club").

2.    As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A; e) defamation; and f) various common law torts, including conversion.

3.    In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.    As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.    According to publicly available records, defendant ORANGE LANTERN, INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at Route 20 Boston Post Road, Palmer, Massachusetts 01069.   ORANGE

LANTERN, INC. operates Magic Lantern, which is located at 399 Wilbraham Street, Palmer, Massachusetts 01069.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Palmer, Massachusetts is Defendants' principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in Palmer, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Palmer, Massachusetts.

## PARTIES

*Plaintiffs*

9.      Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Andra Cheri Moreland a/k/a Ana Cheri ("Moreland") is a well-known professional model, and a resident of Orange County, California.

11.     Plaintiff Arianny Celeste Lopez ("Lopez") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Chantel Zales ("Zales") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Jaime Edmondson-Longoria ("Longoria") is a well-known professional model, and a resident of Pinellas County, Florida.

16.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

17.     Plaintiff Ina Schnitzer a/k/a Jordan Carver ("Schnitzer") is a well-known professional model, and a resident of Miami-Dade County, Florida.

18.     Plaintiff Julianne Klaren ("Klaren") is a well-known professional model, and a resident of San Diego County, California.

19.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, Hampshire, England.

20.     Plaintiff Tiffany Toth Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

21.     Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Multnomah County, Oregon.

### *Defendants*

22.     Defendant ORANGE LANTERN, INC. is a Massachusetts corporation with a principal place of business in Palmer, Massachusetts.  During times relevant to this action, ORANGE LANTERN, INC. operated Magic Lantern in Palmer, Massachusetts.

23.     Upon information and belief, Defendant MARK PESSOLANO is a resident of the Town of Wilbraham, Hampden County, Massachusetts.  According to publicly available records, and upon information and belief, MARK PESSOLANO, in his capacity as principal, owner and/or CEO of ORANGE LANTERN, INC. maintained operational control over Magic Lantern, including all advertising relating thereto.

### FACTUAL ALLEGATIONS

24.     As set forth immediately below, each Plaintiff is a well-known professional model

who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

26.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Magic Lantern.

27.     In the case of every Plaintiff, such appearance was false.

28.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

29.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

30.     Abigail Ratchford born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Abigail's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six page print spread in

a popular Australian men's magazine, and also led to her being selected to audition for parts in Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1 million followers on Instagram, 4,200,085 followers of Facebook, and 807,494 followers on Twitter.

31.    That we know of, Ratchford is depicted in the photo in Exhibit "A" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Ratchford was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.    Ratchford has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.    Andra Cheri Moreland a/k/a Ana Cheri is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz, was featured as a *Maxim* Instagram Girl of the Week. She is also *Playboy's* Playmate of the Month (October 2015). Ana has 12,360,817 followers on Instagram, 230,276 followers on Twitter, and 6,279,028 followers on Facebook.

34.    That we know of, Moreland is depicted in the photos in Exhibit "B" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Moreland was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.    Moreland has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern,
has received no remuneration for Defendants' unauthorized use of her Image, and has suffered,
and will continue to suffer, damages as a result of same.

36.     Arianny Celeste Lopez is an American model, business woman and celebrity. Ms.
Celeste is recognized as one of the most consistent and most popular personalities of the UFC
where she has worked as an Octagon Girl since 2006. Ms. Celeste is the Co-Host of the popular
Velocity TV show, Overhaulin'. She is adored around the world for her exotic beauty and great
relationship with her fans. Ms. Celeste booked her first modeling job when she was just four
months old. Growing up as a very athletic and hardworking young woman, she excelled in cheer,
dance and gymnastics before attending the University of Nevada Las Vegas (UNLV) to purse a
degree in Fitness Management and Nutrition. Fluent in Spanish, Ms. Celeste has quickly become
one of the most sought after talents in the modeling world and has appeared on the covers of some
of the world's most foremost magazines including, Playboy, Maxim US, FHM, Maxim Korea,
Maxim Philippines, FHM Australia and UFC Magazine. In addition to modeling, Ms. Celeste has
hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is
in an elite class of Social Media influencers with over 3.2 million Instagram followers, 702,055
Twitter followers and an incredible 6 million fans on Facebook combined with her own personal
website.

37.     That we know of, Lopez is depicted in the photos in Exhibit "C" to promote
Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that
Lopez was either a stripper working at Magic Lantern, that she endorsed the Club, or that she
was otherwise associated or affiliated with the Club.

38.     Lopez has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Tara Leigh Patrick a/k/a Carmen Electra is an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy and theatre, Carmen Electra has quickly emerged as one of Hollywood's most versatile personalities. Growing up, Ms. Electra attended Cincinnati's School for Creative and Performing Arts. She always knew she was destined to be an entertainer. It was after graduating high school in 1991 that Ms. Electra moved to the City of Angels and caught the eye of Prince, who would go on to produce her self-titled album on his Paisley Park record label. Ms. Electra ultimately ventured into acting with regular roles on *Baywatch* and the MTV's *Singled Out*. Ms. Electra has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Ms. Electra won the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. Electrifying, intoxicating and firmly in control, for two years Ms. Electra brought the high-glam attitude of the MAX Factor line to life with style and sensuality. In 2006, Ms. Electra became a published author with the release of her book, "How to be Sexy." She also formed a dance troupe, The Bombshells, who perform nationwide, and she recently released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Ms. Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, Carmen starred in the film, *Oy Vey, My Son is Gay*. Most recently, Ms. Electra starred in the film *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Ms. Electra

released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first busted onto the Hollywood circuit as a pop artist discovered by music legend Prince. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart and from there, the sultry songstress was on fire, turning up the heat for audiences everywhere, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Part in Palm Springs, and most recently, Life Ball in Vienna. In June of 2014, Ms. Electra released 'Werq', which was followed by the release of a music video. This club anthem is all about woman empowerment and the dynamic music video embodied that vision. Now, the electrifying vixen is back with her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters, Carmen released the energizing track in November. The single invites her fans from all corners of the globe to join her and get lost in her music. She will be releasing more music and touring America in 2015. Ms. Electra partnered with Fleshlight to create her own line of personal lubricants geared towards women in August of 2015. In November 2015, Ms. Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Ms. Electra launched her new perfume, "Carmen Electra", with FragranceNet. Ms. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has 3.1 million Facebook followers, 945,074 Instagram followers, and 395,370 Twitter followers.

40.     That we know of, Electra is depicted in the photo in Exhibit "D" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Electra has never been employed at Magic Lantern, has never been hired to

endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Chantel Zales is an American model, actress and social media phenom. Ms. Zales started modeling right out of high school and is based in LA California. Ms. Zales has been featured in Maxim magazine, FHM magazine in the USA, Thailand, Norway and the Philippines, Lowrider magazine feature and cover, Koncept magazine, Kassanova magazine, Show, Glam Jam, Hush Hush, Kaboom!, GuySpeed.com and Venus Zine. Ms. Zales has also featured in catalogs and campaigns such as, Gila River Casino, Lone Butte Burger, Verona Chophouse, American Bandstand Express, Apple, Sassimi Spa, Rachelle's Salon and for The American Heart Association. Ms. Zale has also appeared in over ten films including Piranha 3D and Young Americans, and has a number of TV appearances to her credit including Pepsi, Bad Boy Fight Night, APS Electric and Acura of Tempe. Ms. Zales is the Brand Ambassador for Shredz fitness clothing. Ms. Zale has over 4.1 million Instagram followers and a further 1 million on her personal Facebook and fan page.

43.     That we know of, Zales is depicted in the photos in Exhibit "E" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Zales was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.     Zales has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Danielle Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood and L*Space, also for Rockstar Energy's Miss Motorcross and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of *Maxim* and *Elegant*. Her career on TV is just as impressive with appearances on *The New Girl*, *The Finder, Breaking In*, *Cougar Town, CSI Entourage, The Jonas Brothers, Miami Trauma, Dark Blue, Love Bites, Friends with Benefits, Battle LA, The Ex's* and hosting the series *WPT Royal Flush*. She has 182,731 followers on Instagram and 16,441 followers on Twitter.

46.     That we know of, Ruiz is depicted in the photo in Exhibit "F" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Ruiz was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Ruiz has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Jaime Edmondson-Longoria comes from a family of police officers. Ms. Edmondson graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting the police force to become a cheerleader for the Miami Dolphins. Ms. Edmondson and fellow

Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Ms. Edmondson was the Playmate of the Month in the January, 2010 issue of "Playboy." She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets. Ms. Edmondson and her fiancée, MLB Superstar Evan Longoria MLB superstar, have 2 children

49.     That we know of, Longoria is depicted in the photo in Exhibit "G" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Longoria has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Jamillette Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current

face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Jamillette's magazine highlights include those of GQ Magazine, Maxim Australia, Open Magazine, and Esquire.

52.     That we know of, Gaxiola is depicted in the photo in Exhibit "H" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Gaxiola was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Gaxiola has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Ina Schnitzer a/k/a Jordan Carver is a German glamour model and actress based in the United States.  Jordan became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's Zoo magazine six times. Jordan won the contest for the racing sport seat production company COBRA and became their spokes model-a position she held till recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has 1,000,000 followers on Instagram, 207,059 followers on Twitter, and nearly 4,000,000 followers on Facebook.

55.     That we know of, Schnitzer is depicted in the photo in Exhibit "I" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Schnitzer was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.     Schnitzer has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.     Julianne Klaren is, and at all times relevant to this action is an American model, spokeswoman, businesswomen and mother. Ms. Klaren has been named in the top ten most beautiful women on Instagram and has been the feature of countless feature interviews and photo shoots. Ms. Klaren was born, raised and still lives in San Diego, California. Ms. Klaren has become a social media influencer of note with her rapid rise to the multi-million followers elite category. Ms. Klaren currently has over 5 Million Instagram followers and has her own website that is commercialized.

58.     That we know of, Klaren is depicted in the photos in Exhibit "J" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Klaren was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

59.     Klaren has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.     Lucy Pinder is, and at all times relevant to this action, an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006

and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms. Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms. Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

61.     That we know of, Pinder is depicted in the photo in Exhibit "K" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Pinder has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered,

and will continue to suffer, damages as a result of same.

63.    Tiffany Toth Gray a/k/a Tiffany Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Ms. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Ms. Toth has over 3,804,626 Facebook followers, 1,375,514 Instagram followers, and 258,447 Twitter followers.

64.    That we know of, Gray is depicted in the photo in Exhibit "L" to promote Magic Lantern on its Facebook page. This Image was intentionally altered to make it appear that Gray was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

65.    Gray has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

66.    Sara Underwood first appeared in Playboy in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Ms. Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many Playboy videos, and not only has appeared as herself in the films The House Bunny (2008) and Miss March (2009) but also on episodes of such reality TV series as Kendra (2009), The Girls Next Door (2005) and Bridget's Sexiest Beaches (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable

network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over 5 million social media followers.

67.     That we know of, Underwood is depicted in the photo in Exhibit "M" to promote Magic Lantern on its Instagram on its page. This Image was intentionally altered to make it appear that Underwood was either a stripper working at Magic Lantern, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

68.     Underwood has never been employed at Magic Lantern, has never been hired to endorse Magic Lantern, has never been otherwise associated or affiliated with Magic Lantern, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

69.     Upon information and belief, Defendants operated, during the relevant time period, Magic Lantern, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

70.     Upon information and belief, and in furtherance of its promotion their promotion of Magic Lantern, Defendants own, operate and control Magic Lantern's social media accounts, including its Facebook, Twitter, and Instagram accounts.

71.     Defendants used Magic Lantern's Facebook, Twitter, and Instagram accounts to promote Magic Lantern, and to attract patrons thereto.

72.     Defendants did this for their own commercial and financial benefit.

73.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Magic Lantern, that

she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

74.     Defendants used Plaintiffs' Images and created the false impression that they

worked at or endorsed Magic Lantern to receive certain benefits therefrom, including but not

limited to: monetary payments; increased promotional, advertising, marketing, and other public

relations benefits; notoriety; publicity; as well as an increase in business revenue, profits,

proceeds, and income.

75.     As Defendants were at all times aware, at no point have any of the above-named

Plaintiffs ever been affiliated with or employed by Magic Lantern and at no point have any of the

Plaintiffs ever endorsed Magic Lantern, or otherwise been affiliated or associated with Magic

Lantern.

76.     All of Defendants' activities, including their misappropriation of Plaintiffs'

Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and

Defendants did not compensate Plaintiffs for their use of their Images.

77.     As such, Plaintiffs have never received any benefit from Defendants' use of their

Images.

***Standard Business Practices in the Modeling Industry***

78.     It is common knowledge in the modeling industry that the hiring of a model for a

commercial purpose involves a particularized methodology and process.

79.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following

factors: a) the reputation, earning capacity, experience, and demand of that particular model; b)

the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television

commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

80.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Magic Lantern by and through various marketing and promotional mediums including, without limitation, Magic Lantern's Facebook.

81.     Defendants showcased Plaintiffs' Images on Magic Lantern's social media pages to create the false impression that Plaintiffs worked at Magic Lantern, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

82.     Defendants did so to attract clientele to Magic Lantern, promote Magic Lantern, and thereby generate revenue for Defendants.

83.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Magic Lantern.

84.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

85.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

86.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

87.     At no point were any of the Plaintiffs ever affiliated with Magic Lantern, or Defendants.

88.     Each of Plaintiffs' Images was used without her consent.

89.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

90.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

91.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Magic Lantern website, Twitter, Facebook, or Instagram accounts.

92.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

93.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

50.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

51.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

52.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Magic Lantern or agreed to appear in Magic Lantern's advertisements.

53.     Given the false and misleading nature of the advertisements, they had the capacity

to deceive consumers and, upon information and belief, did so deceive consumers.

54.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Magic Lantern.

55.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

56.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

57.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

58.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

59.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

60.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

61.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

62.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false

impression with the public that Plaintiffs were affiliated, connected, or associated with Magic

Lantern, or worked at, sponsored, or approved of Magic Lantern's goods, services or commercial

activities.

63.    This was done to promote and attract clientele to Magic Lantern, and thereby

generate revenue for the Defendants.

64.    Thus, this was done in furtherance of Defendants' commercial benefit.

65.    Despite the fact that Defendants were at all times aware that the Plaintiffs were

neither affiliated, connected or associated with Magic Lantern, nor worked at, sponsored, or

approved of Magic Lantern's goods, services or commercial activities, Defendants nevertheless

used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at

and/or affiliation with Magic Lantern.

66.    Defendants knew that their use of Plaintiffs' Images would cause consumer

confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at

the Club.

67.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact

cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and

the goods and services provided by the Club.

68.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false

endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an

amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Common Law Right of Privacy)**

69.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

- 22 -

70.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

71.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

72.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Magic Lantern's website or related social media accounts as part of Defendants' advertising campaign.

73.     At all relevant times, Magic Lantern's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

74.     Magic Lantern's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

75.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

76.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

77.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

78.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Magic Lantern.

79.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

80.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

81.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

82.     Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

83.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FOURTH CAUSE OF ACTION
**(Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)**

84.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

85.     Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

86.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

87.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Magic Lantern's website or related social media accounts as part of Defendants' advertising campaign.

88.     At all relevant times, Magic Lantern's website and social media accounts were

used and operated by Defendants for advertising and trade purposes.

89.     Magic Lantern's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

90.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

91.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

92.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

93.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Magic Lantern.

94.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

95.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

96.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

97. Defendants' actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

98. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 3A*: Unauthorized Use of Individual's Name, Portrait, or Picture)

99. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

100. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

101. Within Massachusetts, Defendants' used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their strip club.

102. No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants' to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

103. Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

104. As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

105. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

106.     Plaintiffs are informed and believe and hereon allege that Defendants'
republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or
promote a different product.

107.     Defendants were at all relevant times aware that they never received any
Plaintiffs' permission or consent to use their Images on any website or social media account, or
on any other medium, in order to promote the Club.

108.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

109.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs'
Images.

110.     In addition to the actual damages suffered by Plaintiffs based on Defendants'
violation of this statute and given Defendants' willful and knowing misappropriation and
publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

**SIXTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

111.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the
preceding paragraphs as if fully set forth hereon.

112.     As set forth hereon, each Plaintiff has and had at the time of Defendants'
misappropriation a commercial interest in her image, photo, persona and likeness.

113.     Said commercial interest was developed by each Plaintiff through her investment
of time, effort and money in her career, image, persona and likeness.

114.     As set forth herein, Defendants used each Plaintiff's image and likeness for
commercial purposes by using same in Blush advertising.

115.     Defendants did so without any Plaintiff's consent, written or otherwise.

116.     Plaintiffs are further informed and believe and hereon allege that discovery will

- 27 -

prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

118.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

119.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

120.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

121.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

122.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

123.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

124.     As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either strippers at the Club, endorsed the Club, or were otherwise associated

- 28 -

or affiliated with the Club.

125.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

126.    Defendants actions occurred primarily and substantially within Massachusetts.

127.    Defendants were at all times aware that no Plaintiff was a stripper at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

128.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

129.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

130.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, , as provided for under this statute.

131.     In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Defamation)

132.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

133.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

134.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

135.    None of these representations were true.

136.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club or endorsed the Club.

137.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

138.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

139.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

140.    Defendants' publication of Plaintiffs' Images constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking

persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

141.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

142.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

143.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

144.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## NINTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

145.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

146.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

147.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

148.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

149.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

150.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

151.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

152.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

153.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Conversion)**

154.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

158.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

161.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Quantum Meruit)

166. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167. Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

170. Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to

promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury.

PLAINTIFFS,
By their Attorneys,

/s/ Paul Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@swdlawfirm.com

*and*

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*\*Pro Hac Vice Application Forthcoming*

Dated:  <u>July 1, 2019</u>